**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNOR ANDREW M. CUOMO, <br><br> Movant, <br><br> v. <br><br> NEW YORK STATE ASSEMBLY JUDICIARY COMMITTEE, <br><br> Respondent. | Case No. 22MISC 279 |
| TROOPER 1, <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK STATE POLICE, ANDREW CUOMO, MELISSA DEROSA, and RICHARD AZZOPARDI, <br><br> Defendants. | Pending In: Civil Action No. 22-cv-00893 (LDH) (TAM), United States District Court for the Eastern District of New York |

**MEMORANDUM OF LAW IN SUPPORT OF FORMER GOVERNOR ANDREW M. CUOMO'S MOTION TO COMPEL THE NEW YORK STATE ASSEMBLY JUDICIARY COMMITTEE'S COMPLIANCE WITH SUBPOENA**

**Glavin PLLC**
Rita M. Glavin
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

**SHER TREMONTE LLP**
Theresa Trzaskoma
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel for former Governor*
*Andrew M. Cuomo*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 3

    The AJC Investigation .......................................................................................................... 3

    The AJC Report & Related Materials .................................................................................. 4

    The Trooper 1 Action & the Amended Complaint's Reliance on the AJC Report ............ 6

    The Subpoena & The AJC's Noncompliance ..................................................................... 7

ARGUMENT ............................................................................................................................. 9

I.     THE INFORMATION SOUGHT IS UNQUESTIONABLY RELEVANT ........................... 9

II.    THE REQUESTED MATERIALS IN THE SUBPOENA ARE NOT PRIVILEGED ........ 10

        A.    The Legislative Privilege Does Not Protect the Requested Materials ................. 10

            1.    No Legislative Privilege Applies to the Requested Materials ................. 11

            2.    Any Legislative Privilege Has Been Waived ........................................... 12

            3.    Even If Any of the Requested Materials Are Privileged, They Should Still Be Disclosed ....................................................................... 14

        B.    The Attorney-Client Privilege Does Not Protect the Requested Materials ......... 15

            1.    The Attorney-Client Privilege Does Not Apply to the Requested Materials ...................................................................................................... 15

            2.    If Any Attorney-Client Privilege Applied, It Has Been Waived ............. 16

        C.    The Work Product Protection Does Not Protect Documents Sought in Governor Cuomo's Subpoena .............................................................................. 17

III.  CONFIDENTIALITY CONCERNS ARE NOT A PROPER OBJECTION ...................... 20

IV.  THERE IS NO UNDUE BURDEN ON THE AJC IN PRODUCING THE REQUESTED MATERIALS ..................................................................................... 20

V.    THE AJC'S REMAINING OBJECTIONS ARE UNAVAILING ...................................... 21

i

CONCLUSION.................................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Irish Banks v. Bank of Am., N.A.*,
 240 F.R.D. 96 (S.D.N.Y. 2007) ............................................................... 19

*Almonte v. City of Long Beach*,
 No. CV 04-4192(JS)(JO), 2005 WL 1796118 (E.D.N.Y. July 27, 2005) ................................ 13

*Coventry Capital US LLC v. EEA Life Settlements Inc.*,
 2020 WL 7383940 (S.D.N.Y. Dec. 16, 2020) .......................................... 20

*Coventry Capital US LLC v. EEA Life Settlements Inc.*,
 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021) .......................................... 20

*Favors v. Cuomo*,
 285 F.R.D. 187 (E.D.N.Y. 2012) ...................................................... 16, 18

*Favors v. Cuomo*,
 No. 11-CV-5632 DLI RR, 2013 WL 11319831 (E.D.N.Y. Feb. 8, 2013) .................. 12, 13, 14

*In re Kidder Peabody Sec. Litig.*,
 168 F.R.D. 459 (S.D.N.Y. 1996) ...................................................... 17, 19

*MacNamara v. City of New York*,
 249 F.R.D. 70 (S.D.N.Y. 2008) ............................................................. 21

*MacNamara v. City of New York,* 04 CIV.9612 (KMK)(JCF),
 2006 WL 3298911 (S.D.N.Y. Nov. 13, 2006) ......................................... 21

*Nat'l Ass'n for Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*,
 No. 17CIV8943CSJCM, 2018 WL 11260468 (S.D.N.Y. Apr. 27, 2018) ........................ 11, 13

*Nat'l Cong. for Puerto Rican Rts. ex rel. Perez v. City of New York*,
 194 F.R.D. 88 (S.D.N.Y. 2000) ............................................................. 9, 10

*New York Times Co. v. United States Dep't of Just.*,
 939 F.3d 479 (2d Cir. 2019) ............................................................ 19, 20

*Norton v. Town of Islip*,
 No. CV 04-3079 PKC SIL, 2015 WL 5542543 (E.D.N.Y. Sept. 18, 2015)............................ 17

*Rodriguez v. Pataki,*
   280 F. Supp. 2d 89 (S.D.N.Y.) ............................................................................................... 14

*Rodriguez v. Pataki*,
   No. 02 CIV. 3239RMBFM, 2003 WL 22109902 (S.D.N.Y. Sept. 11, 2003) ......................... 13

*Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.*,
   No. CV166517SJFAKT, 2018 WL 4864833 (E.D.N.Y. Sept. 28, 2018)................................ 16

Former Governor Andrew M. Cuomo ("Governor Cuomo") brings this motion to compel the New York State Assembly Judiciary Committee (the "AJC") to comply with a Fed. R. Civ. P. Rule 45 subpoena seeking documents material to a federal lawsuit alleging that Governor Cuomo engaged in sexual harassment (claims that Governor Cuomo denies). Although the underlying lawsuit specifically cites and relies upon findings of the AJC's investigation and report concerning Governor Cuomo's conduct, the AJC has refused to produce documents called for by the subpoena, including investigative materials specifically implicated in the underlying claims. For the reasons set forth below, the AJC should be compelled to produce the subpoenaed documents underlying the investigation and report so that Governor Cuomo can properly defend himself in the lawsuit that relies heavily upon that investigation and report.

## PRELIMINARY STATEMENT

Beginning in March 2021, attorneys retained by the AJC investigated allegations that Governor Cuomo acted inappropriately. Although the AJC's investigation was initially described as an impeachment investigation, the clear and ultimate goal was for the AJC to release a public report. Indeed, even after Governor Cuomo announced his resignation effective August 24, 2022, and after the AJC itself acknowledged that it had no authority to impeach, the AJC continued its investigation and eventually released a report on November 22, 2021 (the "AJC Report" or the "Report"). The Report and its accompanying press release emphasized that the AJC's investigators had reviewed "hundreds of thousands of pages of documents" and had also reviewed statements made by "more than 200 individuals." Among other things, the Report concluded that Governor Cuomo "engaged in sexual harassment," summarized factual findings regarding the claims of

twelve women, and "highlight[ed]" allegations by two complainants, including a New York State Police employee referred to as "Trooper 1."[1]

In February 2022, Trooper 1 filed a lawsuit against Governor Cuomo in the Eastern District of New York, captioned *Trooper 1 v. New York State Police, Andrew Cuomo, Melissa DeRosa, and Richard Azzopardi*, 22-CV-893 (LDH) (TAM) (the "Trooper 1 Action"). Seeking to bolster her claims, Trooper 1 alleges facts related not only to herself but to the other women discussed in the AJC Report. Indeed, Trooper 1 relies heavily on the AJC Report, calling it "comprehensive" and parroting its characterization of the evidence against Governor Cuomo as "overwhelming."

Under the Federal Rules of Civil Procedure, as part of his defense against Trooper 1's claims, Governor Cuomo is broadly entitled to discover information from third parties, including information he needs to rebut the AJC Report's factual findings that are repeated and relied upon in Trooper 1's Amended Complaint and to demonstrate that the AJC's investigation was not comprehensive and that there is not "overwhelming evidence" to support the allegations against Governor Cuomo.

On July 1, 2022, in connection with the Trooper 1 Action, Governor Cuomo served a Rule 45 subpoena (the "Subpoena") on the AJC seeking documents related to the AJC's investigation and Report concerning the sexual harassment allegations,[2] including, among other things, (i) subpoenas served by the AJC; (ii) documents provided to the AJC from third parties and records of statements made to the AJC by third parties; (iii) AJC communications with third-party witnesses or their counsel; and (iv) communications between the AJC and other law enforcement, including the New York State Office of the Attorney General ("OAG").

---

[1] Governor Cuomo did not oppose Trooper 1's motion to proceed anonymously in the Trooper 1 Action.

[2] The AJC Report addressed other issues unrelated to the sexual harassment allegations, such as the reporting of nursing home residents who died as a result of COVID-19. The Subpoena seeks only records relating to the sexual harassment allegations.

The AJC has informed Governor Cuomo that it will not produce any documents in response to the Subpoena. In support of its blanket refusal, the AJC asserts myriad objections, including various privilege claims, and further argues that requiring compliance would subject the AJC to an undue burden. In sum, the AJC has informed Governor Cuomo that, for one reason or another, it will not voluntarily produce any documents in response to the Subpoena. Despite several good-faith efforts to resolve the disputes over the Subpoena, the AJC and Governor Cuomo reached an impasse, leading to this motion.

As set forth below, the Subpoena is valid and seeks relevant, nonprivileged materials from the AJC, including materials underlying the AJC's publicly disclosed investigation. The AJC should be compelled to produce those documents.

## FACTUAL BACKGROUND

### *The AJC Investigation*

In December 2020 and February 2021, two women who had previously worked in the New York State government publicly accused Governor Cuomo of sexually harassing them. On March 1, 2021, Governor Cuomo issued a formal referral pursuant to New York Executive Law § 63(8) to the OAG to appoint an independent law firm to investigate the claims. *See* Declaration of Theresa Trzaskoma (Trzaskoma Decl.), Ex. 5.[3] That investigation started on March 8, 2021 (the "OAG Investigation"). *See* Ex. 6. On August 3, 2021, the OAG concluded its investigation and issued its report.

On March 17, 2021, the AJC announced that it was beginning an impeachment investigation (the "AJC Investigation") into the same allegations and that it had retained the law firm Davis Polk & Wardwell LLP ("DPW") to lead it. *See* Ex. 7.

---

[3] All cites to exhibits to the Trzaskoma Decl. are cited as "Ex. __."

On August 10, 2021, Governor Cuomo announced his resignation effective August 24, 2021. Shortly thereafter, lawmakers suspended the ongoing AJC Investigation as moot. Assembly Speaker Heastie stated at the time that, "[t]he real role for the Assembly was to consider impeachment. Once the governor is to resign, we can't fulfill that role." *See* Ex. 10. Speaker Heastie laid out the AJC's decision in detail, including referring the public to a memorandum on the AJC's lack of authority to impeach someone no longer in office:

> After consulting with Chair Lavine and my majority colleagues, the Assembly will suspend its impeachment investigation upon the governor's resignation taking effect on August 25.
>
> There are two reasons for this decision. First, the purpose of the Assembly Judiciary Committee's impeachment investigation was to determine whether Governor Cuomo should remain in office. The governor's resignation answers that directive. Second, we have been advised by Chair Lavine - with the assistance of counsel - of the belief that the constitution does not authorize the legislature to impeach and remove an elected official who is no longer in office (view Impeachment Jurisdiction Memo).

Ex. 19.

Just three days later, however, the AJC reversed course and announced that the AJC investigation would resume, stating "The Assembly Judiciary Committee will continue to review evidence and issue a final report on its investigation of Governor Cuomo." *See* Ex. 11.

### *The AJC Report & Related Materials*

On November 22, 2021, the AJC publicly released the AJC Report announcing the conclusion that "there is overwhelming evidence that the former Governor [Cuomo] engaged in sexual harassment." Ex. 12 at 2. The AJC Report further asserted that Governor Cuomo "[e]ngaged in multiple instances of sexual harassment, including by creating a hostile work environment and engaging in sexual misconduct." *Id*. at 46.

The AJC detailed the investigative process underlying the Report's conclusions:

> In the course of this investigation, Davis Polk has reviewed approximately 600,000 pages of documents, including photographs, text messages, BlackBerry PIN messages, emails, policies and procedures, recordings of phone calls, social media accounts, materials from prior litigations, video recordings, interview memos, transcripts, and other relevant materials. In addition, we interviewed, received proffers from, and/or reviewed interview and/or deposition materials for more than 200 individuals.

*Id.* at 1. The AJC Report specifically identified some (but not all) witnesses, summarized some (but not all) witness statements, and described and referred to documents and other information the AJC obtained from third parties.

The AJC Report focuses on the allegations of Trooper 1, devoting more than three pages to her claims. *Id.* at 16-19. In summarizing Trooper 1's allegations, the AJC relied not only on transcribed testimony from Trooper 1, but also on an interview with Trooper 1 that the AJC conducted separately. *Id.* The AJC Report also includes information related to eleven other complainants, including state employees and non-state employees. Ex. 12.

Not only did the AJC selectively disclose to the public significant information about the Investigation, the AJC shared investigative materials with others. For example, the AJC shared information with the OAG, and in turn, received information from the OAG. Ex. 8, Ex. 9. The AJC also shared investigative materials with local law enforcement authorities. Ex. 9, Trzaskoma Decl., ¶ 16.[4] Many of the documents cited and information disclosed in the AJC Report, including those that the AJC presumably provided to the OAG, JCOPE, and local law enforcement, have never been publicly disclosed.

The AJC Report specifically acknowledged that the AJC and the New York State Assembly had no authority to impeach Governor Cuomo after he left office, making clear that the purpose of

---

[4] Materials from the AJC Investigation were also shared with the New York State Joint Commission on Public Ethics ("JCOPE"), a now-defunct state agency that performed its own "independent inquiry" into Governor Cuomo's conduct in office. *See* https://ethics.ny.gov/system/files/documents/2022/07/hogan-lovells-jcope-report_2022.07.01.pdf at 3.

the investigation was not to determine whether to initiate impeachment proceedings but was instead to provide a report to the public. Ex. 12 at 5-7. Indeed, in a letter to Speaker Heastie, then-AJC Chair Charles Lavine confirmed as much: "The Committee retained the counsel of Davis, Polk & Wardwell LLP to lead the investigation. ***Although the Governor resigned from office in August, you directed the Committee to prepare a report on its findings***." Ex. 13 at 1 (emphasis added).

### *The Trooper 1 Action & the Amended Complaint's Reliance on the AJC Report*

On February 17, 2022, Trooper 1 commenced a lawsuit against Governor Cuomo, the New York State Police ("NYSP"), and Melissa DeRosa ("DeRosa") in the United States District Court for the Eastern District of New York. On February 18, 2022, Trooper 1 amended her Complaint, adding Richard Azzopardi as a Defendant. *See* Ex. 1. In her Amended Complaint, Trooper 1 asserts six causes of action against Governor Cuomo and others: unlawful discrimination and retaliation in violation of the Equal Protection Clause, the New York State Human Rights Law, and the New York City Human Rights Law. *Id*. Trooper 1 alleges that, in her capacity as a New York State Trooper assigned to Governor Cuomo's personal security detail, Governor Cuomo "sexually harassed" her. *Id*. ¶¶ 1, 3.

Trooper 1's Amended Complaint makes numerous references—implicit and explicit—to the OAG and AJC Reports. The Preliminary Statement refers not only to Trooper 1's individual allegations, but to the allegations of all "11 women." *Id*. Trooper 1 specifically alleges:

> An exhaustive investigation by independent attorneys appointed by the New York State Attorney General concluded that "the Governor sexually harassed a number of current and former New York State employees by, among other things, engaging in unwelcome and nonconsensual touching, as well as making numerous offensive comments of a suggestive and sexual nature that created a hostile work environment for women." The investigation further concluded that "the Executive Chamber's culture – one filled with fear and intimidation, while at the same time normalizing the

Governor's frequent flirtations and gender-based comments contributed to the conditions that allowed the sexual harassment to occur and persist."

*Id*. ¶ 4. And Trooper 1 further alleges that "[a] separate comprehensive investigation by the Judiciary Committee of the New York State Assembly found 'overwhelming evidence that the former Governor engaged in sexual harassment,' expressly highlighting the Governor's victimization of Trooper 1." *Id*. ¶ 5.

Trooper 1 devotes more than ten pages of her Amended Complaint to "The Governor's Harassment of Other Women." *Id*. ¶ 76-143. This section chronicles the allegations made against Governor Cuomo by Brittany Commisso (¶¶ 76-91), Charlotte Bennett (¶¶ 92-102), Lindsay Boylan (¶¶ 103-116), Alyssa McGrath (¶¶ 117-123), Ana Liss (¶¶ 124-130), "Kaitlin" (¶¶ 131-139), and "Other Victims" (¶¶ 140-143). In doing so, the Amended Complaint parrots the AJC Report and relies upon its findings, which discusses the allegations by each of these women.

On July 15, 2022, Governor Cuomo moved to dismiss Trooper 1's retaliation claims from the Amended Complaint, but did not move against the harassment claims, and the fully briefed motion was filed on the docket on September 2, 2022. Ex. 2. Although that motion to dismiss is pending, discovery in the Trooper 1 Action, is underway pursuant to a June 6, 2022 scheduling order. Ex. 2.

***The Subpoena & The AJC's Noncompliance***

On July 1, 2022, counsel for Governor Cuomo served a valid subpoena pursuant to Federal Rule of Civil Procedure 45 on the AJC. Ex. 3. At a high level, the Subpoena demands materials related to the AJC's investigation on sexual harassment allegations against Governor Cuomo and the Report regarding the same (the "Requested Materials"), including the following:

- Subpoenas served by and requests for information from the AJC;

- Evidence gathered in the investigation, including documents provided from third parties to the AJC, records of statements made to the AJC by witnesses or their counsel, and communications between third parties and the AJC;
- Reports prepared by DPW, including draft reports; and
- Communications between the AJC and the OAG or other law enforcement.

On August 8, 2022, the AJC served responses and objections to the Subpoena (the "Responses and Objections"), in which it asserted blanket objections to the production of any materials. Ex. 4. A chart summarizing the Subpoena demands and the AJC's Responses and Objections is attached hereto as an Appendix.

The AJC did not produce a privilege log to identify which documents were privileged or why, but instead broadly asserted that the Requested Materials are protected by various privileges, including unidentified "other" privileges. Ex. 4.

On August 19, 2022, counsel for the AJC and Governor Cuomo met and conferred regarding the AJC's Responses and Objections to the Subpoena. On August 30, 2022 counsel for the parties met and conferred once more. During these calls, the AJC did not change its position with regard to any of its specific objections or blanket privilege assertions and confirmed that it would not produce any documents in response to the Subpoena. The AJC took the position that essentially all of the Requested Materials were protected by either the attorney-client privilege or the legislative privilege. The AJC also maintained that the production of the Requested Materials would be overly burdensome and advised that Governor Cuomo should get any documents also in the possession of the OAG from the OAG instead.[5] Additionally, the AJC suggested that the discovery was either premature or irrelevant based on the pending motion to dismiss in the

---

[5] The OAG, however, is also essentially refusing to produce any documents in response to a similar Rule 45 subpoena served in the same action, so this is not a viable solution, even if it were a proper basis for the AJC to refuse to produce documents in its possession.

litigation or the chance that Governor Cuomo moves *in limine* in the future to exclude information beyond the allegations involving Trooper 1 specifically. Trzaskoma Decl., ¶ 7.[6]

## ARGUMENT

### I.   THE INFORMATION SOUGHT IS UNQUESTIONABLY RELEVANT

The AJC objects to every document request in Governor Cuomo's subpoena as "beyond those relevant to any claim or defense of any party or proportional to the needs of the Action." Ex. 4. The AJC's relevance objection is directly contrary to the express terms of Federal Rule of Civil Procedure 26.

Relevance is the touchstone of discoverability and Rule 26 dictates that a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 26 is to be interpreted broadly and it explicitly provides that evidence need not be admissible to be discoverable. *See Nat'l Cong. for Puerto Rican Rts. ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) ("In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be [discoverable]."). In this case, the AJC suggests that the Subpoena is not proper to the extent it seeks information related to other women, not Trooper 1. The AJC has no basis for such an assertion because the Trooper 1 Action plainly implicates not only the AJC Report writ large but also the claims made by other women.

---

[6] To be clear, the pending motion to dismiss seeks only dismissal of Trooper 1's retaliation claims. Therefore, that motion has no bearing on the scope of the discovery sought from the AJC, whose Report and investigation related solely to allegations of harassment. It may well be that Governor Cuomo ultimately will seek to preclude evidence concerning some or all of the other complaining witnesses or will make arguments against their relevance during summary judgment or at trial. But no party has moved for the exclusion of such evidence, nor has the court made any such ruling—and a nonparty witness, like the AJC, is not entitled to rewrite a party's pleading to avoid having to comply with a valid subpoena. Such evidentiary issues are not a proper basis for a relevance objection, and it is particularly inappropriate for the AJC to presume the court's ruling on such evidentiary issues.

A simple review of the Amended Complaint confirms the relevance of the subpoenaed materials. Trooper 1 devotes roughly ten pages of her amended complaint to a section titled "The Governor's Harassment of Other Women," in which she details allegations made by other women. *Id*. In making these allegations, Trooper 1 specifically relies on the findings in the AJC's Report, which she alleges resulted from a "comprehensive investigation." She repeats the Report's allegation that there is "overwhelming evidence that the former Governor engaged in sexual harassment." Ex. 4, ¶ 5.

Under these circumstances and under the liberal discovery standards, Governor Cuomo is entitled to discover materials related to the AJC's investigation of the sexual harassment allegations, including documents that would allow him to challenge Trooper 1's allegation (and the AJC's claim) that the investigation was "comprehensive." Further, because Trooper 1 and other complainants and witnesses were independently interviewed by the AJC about the allegations, records provided (and not provided) relating to the allegations and statements individuals made (and did not make) during those interviews are highly relevant to the pending lawsuit.

## II.     THE REQUESTED MATERIALS IN THE SUBPOENA ARE NOT PRIVILEGED

### A.     The Legislative Privilege Does Not Protect the Requested Materials

The AJC raises legislative privilege as an objection to most document requests in the Subpoena.[7] Specifically, the AJC invokes the legislative privilege to resist turning over (i) subpoenas served by the AJC's investigators, (ii) evidence gathered by the AJC as part of the investigation, including documents from third parties and witness statements, (iii) drafts of the

---

[7] The AJC does not raise any privilege objections to Document Request No. 3. Indeed, the AJC's responses and objections to Governor Cuomo's third document request contain no assertion of privilege at all. Accordingly, it is unclear why the AJC has taken the position in meet and confer conversations that it does not have to produce any documents responsive to the Subpoena on that basis.

AJC report, and (iv) any summaries of the investigation shared between the AJC's investigators and the AJC.

The legislative privilege does not, however, apply to these documents because they were part of an investigation that was to be made public and not part of internal legislative deliberations. And even if it ever applied, the AJC waived any legislative privilege by issuing a lengthy public report. Moreover, even assuming the legislative privilege applied to some or all of the Requested Materials, it is a qualified privilege that should not protect against disclosure under the circumstances here, where Trooper 1 is relying on the AJC investigation and AJC Report to support her claims against Governor Cuomo and where Governor Cuomo needs the investigative materials to defend himself.

### 1. No Legislative Privilege Applies to the Requested Materials

The doctrine of legislative privilege is designed to protect legislators and their staff from compelled disclosure of documentary and testimonial evidence with respect to actions within the scope of legitimate legislative activity. *See Nat'l Ass'n for Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*, No. 17CIV8943CSJCM, 2018 WL 11260468, at *4 (S.D.N.Y. Apr. 27, 2018). As a result, the legislative privilege applies only to acts that are "quintessentially legislative," that are an "integral step" in the legislative process, and that bear "the hallmarks of traditional legislation." *Favors v. Cuomo*, No. 11-CV-5632 DLI RR, 2013 WL 11319831, at *6 (E.D.N.Y. Feb. 8, 2013); *see also id*. at *5. Because the purpose of the privilege is to protect the integrity of the non-public legislative process, it does not apply to public communications. Thus, press releases newsletters, and other documents that serve "primarily [as] means of informing those outside the legislative forum" are not privileged. *Favors*, 2013 WL 11319831, at *6.

In this case, the AJC broadly asserted that the legislative privilege applies to nearly all of the Requested Materials. But the AJC has not supplied a privilege log or provided a basis for

believing that any (much less all) of the Requested Materials are connected to a legislative purpose. To the contrary, the documents are all related to a public Report. Indeed, the AJC's press release announcing the investigation indicates that providing information to the public was the AJC's purpose. Ex. 13, Ex. 14. Moreover, even if the AJC may have initially intended the investigation to be solely for the purpose of evaluating whether to bring an impeachment case, the investigation continued after Governor Cuomo had resigned, when, as the AJC concedes, impeachment was no longer a possibility and the only reason to investigate was to issue a public report. Ex. 11, Ex. 18. Thus, even if the Requested Materials had been subject to legislative privilege at one point, the materials lost that protection once the AJC changed course by abandoning the impeachment investigation and instead deciding to continue with an investigation that would conclude with the issuance of a public report.

*Favors* supports disclosure. In that case, several New York legislative bodies asserted privilege over a number of documents related to redistricting plans. After reviewing certain documents in camera, the court rejected defendants' claim of legislative privilege over a memorandum prepared for the Senate Majority by an attorney at Jones Day. Though styled as a legal memorandum providing legal advice on the redistricting process, the court required disclosure because the context of the memo made clear that it was "intended to serve, instead, as a communication to those outside the legislative forum, much like a press release." 2013 WL 11319831, at *7.

The same is true here. The Requested Materials relate to a public report rather than internal legislative discussions, and the information should be disclosed.

### 2.    Any Legislative Privilege Has Been Waived

Even if properly asserted, the legislative privilege nevertheless can be waived if "the parties holding the privilege share their communications with an outsider." *Favors*, 2013 WL 11319831,

at *10; *Nat'l Ass'n for Advancement of Colored People*, 2018 WL 11260468, at *6. If a party claims legislative privilege, it means they are "entitled not to divulge their reasons for supporting or opposing legislation, and not to discuss such matters with outsiders. ***It does not mean they [are] entitled to discuss those matters with some outsiders but then later invoke the privilege as to others***." *Almonte v. City of Long Beach*, No. CV 04-4192(JS)(JO), 2005 WL 1796118, at *3 (E.D.N.Y. July 27, 2005) (emphasis added). Disclosing information to the public, therefore, results in a waiver of the legislative privilege. *See Rodriguez v. Pataki*, No. 02 CIV. 3239RMBFM, 2003 WL 22109902, at *3 (S.D.N.Y. Sept. 11, 2003), *aff'd*, 293 F. Supp. 2d 313 (S.D.N.Y. 2003).

In this case, the AJC waived any claim to privilege as to the investigative materials when it issued its 45-page Report on November 22, 2021. Exs. 12-14. The AJC report discusses in detail the allegations against Governor Cuomo, the AJC's investigative process, the AJC's analysis of relevant law, and the AJC's factual conclusions. Ex. 12. As the AJC noted in the contemporaneous press release:

> During the course of the investigation, hundreds of thousands of pages of documents, including photographs, texts messages, BlackBerry PIN messages, emails, recordings of phone calls, social media accounts, video recordings, memos, transcripts and other materials were reviewed. The investigation included interviews, proffers, or review of interview and/or deposition materials for more than 200 individuals. The investigation also involved the review of the statements and writings by the former governor and his counsel throughout the investigation.

Ex. 14. Indeed, the Report contains 364 footnotes citing to various investigative materials that underly the AJC's findings, including witness interviews by the AJC. Ex. 12 at 47-60.

Thus, the AJC has not kept the contents of its investigation carefully cloistered. Having made such public disclosures, the AJC waived any legislative privilege it might otherwise claim.

### 3.    Even If Any of the Requested Materials Are Privileged, They Should Still Be Disclosed

The legislative privilege is not absolute. Instead, the court must balance the interests of the party seeking the evidence against the interests of the individual claiming the privilege. *Favors*, 2013 WL 11319831, at *11. To determine whether to order disclosure of materials protected by legislative privilege, courts weigh several competing factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Rodriguez v. Pataki,* 280 F. Supp. 2d 89, 100–01 (S.D.N.Y.), *aff'd*, 293 F. Supp. 2d 302 (S.D.N.Y. 2003) (ultimately requiring disclosure of all documents only protected by legislative privilege and no other privilege); *Favors*, 2013 WL 11319831, at *11 (requiring the disclosure of certain documents protected by legislative privilege after analyzing the *Rodriguez* factors). These factors all weigh heavily in favor of disclosure.

First, the Requested Materials are relevant to this litigation, as Trooper 1 has put the full contents of the AJC Report at issue in this litigation. *Supra* Section I. Indeed, Trooper 1 relies on the fact that the AJC performed a "separate and comprehensive" investigation resulting in a conclusion that there is "overwhelming evidence" that Governor Cuomo engaged in "sexual harassment." Ex. 1, ¶ 5. Accordingly, Trooper 1 has put the AJC Report and the materials the AJC relied upon directly at issue. Second, the Requested Materials are not available from any other source, as the only possible source for the information gathered and relied upon by the AJC is the AJC itself.[8] Third, this litigation is obviously serious: Trooper 1 is alleging that Governor Cuomo

---

[8] To the extent the Requested Materials from the AJC overlap with any materials in the possession of the OAG, the OAG is similarly refusing to produce any documents.

sexually harassed her during his tenure as Governor and is pursuing claims against him for multiple violations of the law. Fourth, although the AJC itself is not a party to the litigation, the AJC Report and its findings is at the heart of this litigation.[9] Finally, there should be no concern about the possibility of timidity by government employees or witnesses, as the AJC Report was made public and the allegations made by Governor Cuomo's accusers were provided to the general public in great detail.

### B. The Attorney-Client Privilege Does Not Protect the Requested Materials

The AJC raises attorney-client privilege as an objection to many of the document requests in the Subpoena, including as to documents and statements the AJC obtained from third parties, drafts of the AJC Report, and reports on the investigation from DPW, including as to their factual findings. The attorney-client privilege, however, does not protect these materials.

### 1. The Attorney-Client Privilege Does Not Apply to the Requested Materials

To substantiate a claim of attorney-client privilege, the proponent must establish three elements: (i) communication between client and counsel that (ii) was intended to be and was in fact kept confidential and (iii) was made for the purpose of obtaining or providing legal advice. *Favors v. Cuomo*, 285 F.R.D. 187, 198 (E.D.N.Y. 2012); *Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.*, No. CV166517SJFAKT, 2018 WL 4864833, at *5 (E.D.N.Y. Sept. 28, 2018). Because the AJC cannot meet each of the required elements, the objections rooted in the attorney-client privilege fail.

The AJC has the burden to show that an attorney-client relationship exists in relation to the documents it claims are privileged. However, there is no attorney-client relationship between third

---

[9] Moreover, Trooper 1 filed a corresponding complaint with the EEOC against Governor Cuomo, the New York State Police, and New York State. And Trooper 1 has advised the court that she intends to amend her complaint again once she receives a right-to-sue letter from the EEOC.

parties or witnesses who provided statements or testimony to the AJC.  The AJC offers no basis why materials or statements from these outside sources would fall within an attorney-client relationship.

Second, there is no reason to believe that this information was intended to be kept confidential, nor was it.  Indeed, the AJC made clear through press releases that it would continue its investigation regardless of the fact that Governor Cuomo was resigning and therefore there was no authority to impeach him. Ex. 11. Months after Governor Cuomo's resignation, the AJC published its Report and confirmed that it would cooperate with any other law enforcement investigations by providing documents to the offices undertaking those investigations. Exs. 12-14. It is therefore clear that the AJC did not intend to keep this information confidential and, consistent with that intent, it made the information public instead.

Third, the AJC offers no support for how the documents and information sought were created or provided in connection with legal advice. Even if the AJC could argue that originally the investigation was undertaken as part of its legislative work to determine whether Governor Cuomo should be impeached, it cannot possibly argue that was the case after it acknowledged that impeachment was no longer an option once Governor Cuomo resigned and the AJC then decided to still move forward with its investigation and issue a public report. Ex. 11.

### 2.      If Any Attorney-Client Privilege Applied, It Has Been Waived

To the extent the attorney-client privilege ever applied to any of Requested Materials, the AJC waived that privilege when it released the Report to the public. *See In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 469-470 (S.D.N.Y. 1996); *see also Norton v. Town of Islip*, No. CV 04-3079 PKC SIL, 2015 WL 5542543, at *4 (E.D.N.Y. Sept. 18, 2015), *adhered to on denial of reconsideration,* No. CV043079PKCSIL, 2015 WL 13738587 (E.D.N.Y. Dec. 11, 2015) (privilege over memoranda was waived after they became publicly accessible).

16

In an analogous case, a company hired a law firm to perform an investigation into trading activity by one of its prominent traders. *See In re Kidder*, 168 F.R.D. 459, 461–62. The firm conducted an investigation including 120 interviews of 65 employees and authored an 85-page report summarizing in detail the facts uncovered in the investigation. *Id*. at 469-473. Ultimately, that report was released publicly. *Id*. The court in *Kidder* concluded that the issuance of the report and "waiver by publication" required "disclosure of those portions of interview documents that are specifically alluded to in the [] report." *Id*. The court also concluded that because the report had been "injected" into the litigation, that the balance of factual portions of interview documents had to be disclosed. *Id*.

The same reasoning applies with equal force here. All of the materials sought in the Subpoena are alluded to in the AJC Report, which is 45 pages long, contains over 300 footnotes, and specifically references and quotes directly from documents, testimony, and witness statements collected by DPW. Ex. 12. The Report not only makes detailed allegations made by twelve complainants, but also refers to testimony and documents from numerous other witnesses.

All of the underlying documents, statements, and information containing the facts relied upon in the AJC Report relating to the sexual harassment allegations must be produced, as any attorney-client privilege over those statements has been waived.

### C.    The Work Product Protection Does Not Protect Documents Sought in Governor Cuomo's Subpoena

The AJC raises the work product protection as an objection in response to requests for the evidence gathered in its investigation, any draft reports, and any reports to the AJC from DPW regarding the investigation. The work product protection, however, does not apply. The proponent of the work product protection bears the "heavy burden" to establish its existence. *Favors*, 285 F.R.D. at 199–200 (E.D.N.Y. 2012). A document is entitled to work product protection only if it

is prepared in anticipation of litigation, meaning "if in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id*. (internal quotations omitted). To successfully invoke the work product protection, the proponent has the added burden of demonstrating a "real" rather than "speculative" concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation. *Id*. (internal quotations omitted).

The AJC cannot, however, demonstrate that any of the Requested Materials were created in anticipation of any litigation. Instead, all of these documents were part of an impeachment investigation that the AJC transformed into an investigation aimed at the issuance of a public Report. As a result, there is no litigation for which these documents were prepared.

Courts routinely reject the applicability of work product protection to investigative materials such as those at issue here. In *Allied Irish Banks v. Bank of Am., N.A.*, for example, the plaintiff bank hired an independent banking expert and law firm to investigate rogue trading by an employee, after which the plaintiff publicly issued a report containing the findings of that investigation. 240 F.R.D. 96, 100-102 (S.D.N.Y. 2007). In that case, the court noted that the report contained no suggestion that "it was engendered by any concern about litigation" and reasoned that instead, the purpose of the report was to advise the board of directors and to "provide an appropriate public response" to the misconduct at issue. *Id*. at 108. As a result, the work product protection did not apply to the documents underlying the report. The court in *Kidder* came to a similar conclusion with respect to the public report prepared by a law firm for a company regarding trading activity by one employee. *Id*. at 109. In *Kidder*, the court considered that the company issued several press releases about the investigation and concluded that because litigation was not the "principal" or "dominant" motivator, notes and memoranda of interviews were created "as

much for their use in serving [the company's] business needs as for their utility in preparing for litigation." 168 F.R.D. 459, 466. As a result, the court concluded that the company did not sustain its burden for the work product protection. *Id*.

Even if work product protection ever applied, it would have been waived through the release of the Report, a disclosure that is wholly inconsistent with the purpose of work product protection. *See New York Times Co. v. United States Dep't of Just.*, 939 F.3d 479, 494-496 (2d Cir. 2019). In *New York Times Co.*, the work product at issue was a memorandum of United States Attorney John Durham to then-Attorney General Eric Holder, containing recommendations regarding detainees overseas following the September 11, 2001 attacks. *Id*. Attorney General Holder subsequently issued press releases regarding Durham's recommendations. In one of those press releases, Attorney General Holder stated, "Mr. Durham examined any possible CIA involvement with the interrogation of 101 detainees who were in United States custody subsequent to the terrorist attacks of September 11, 2001, a number of whom were determined by Mr. Durham to have never been in CIA custody." *Id*. The Second Circuit found those statements "sufficiently specific that they are tantamount to public disclosure of the parts of the relevant memoranda that relate to this finding" and held that the government waived the privilege over the sections of the memoranda and exhibits relating to the conclusion that a number of the detainees investigated were not in CIA custody. *Id*. at 496.

Here, not only did the AJC issue a press release including sweeping conclusions regarding the allegations at issue and the result of the investigation, but the AJC made the report public. Exs. 12-14. There is no doubt that the AJC Report, with its hundreds of citations to testimony and documents, is "sufficiently specific" to waive attorney work product protection over any documents underlying the AJC Report and the AJC's investigation.

## III.     CONFIDENTIALITY CONCERNS ARE NOT A PROPER OBJECTION

The AJC objects to every request in the Subpoena on the basis of confidentiality concerns, specifically that the Requested Materials contain information that is "private, confidential, highly sensitive, or information that is annoying, oppressive, or embarrassing, to parties or nonparties to the Action." Ex. 4.

That is simply not a basis to refuse to produce documents. There will be a protective order in place specifically envisioned to protect information that producing parties consider to be (and can be designated as) "confidential." *See Coventry Capital US LLC v. EEA Life Settlements Inc.*, 2020 WL 7383940, at *9 (S.D.N.Y. Dec. 16, 2020) (compelling defendant to produce unredacted documents because it identified "no persuasive grounds to depart from the general rule prohibiting relevance redactions" and because any "confidential or highly sensitive documents" could be "designated as confidential"), *objections overruled*, 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021). A protective order can undoubtedly provide the necessary protection to any private or confidential information produced by the AJC, including materials over which it has asserted a qualified privilege like the legislative privilege discussed above. *MacNamara v. City of New York*, 249 F.R.D. 70, 94 (S.D.N.Y. 2008).

## IV.     THERE IS NO UNDUE BURDEN ON THE AJC IN PRODUCING THE REQUESTED MATERIALS

The AJC objects to every demand in Governor Cuomo's Subpoena as unduly burdensome. There is, however, no undue burden on the AJC in responding to the Governor's subpoena. As an initial matter, the AJC bears the burden of showing that the subpoena is unduly burdensome. *See MacNamara v. City of New York*, No. 04 CIV. 9612 (KMK)(JCF), 2006 WL 3298911, at *15–16 (S.D.N.Y. Nov. 13, 2006). An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a

subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* (collecting cases). Just because a large number of documents are sought, it does not follow that there is an undue burden. Indeed, in *MacNamara*, the court reasoned that although there was a large number of documents requested from the DA, the DA was used to responding to "hundreds of requests from civil litigants each year" and noted that the subpoena requested a specific set of documents from a specific time period, for which the DA was the only source. *Id.* at 16.

The same logic applies here. Although the Subpoena may technically call for a high volume of documents, it should not be a burden for the AJC to produce them. Indeed, it appears they are well-organized based on the citations in the report, which reflect that the documents are bates stamped and contained in a universe related to this specific investigation and report. Ex. 12 at 47-60. Moreover, presumably documents the AJC received from third parties were sent to them in an easily packaged format, which the AJC could easily recreate. Additionally, it appears that the OAG and AJC shared information from their investigations, including with district attorneys investigating the same allegations, suggesting that this is indeed a very possible task. Ex. 9, Trzaskoma Decl., ¶ 16. Given the emphasis on the "comprehensive" nature of the AJC Report, it strains credulity that the AJC would somehow be unable to find and send the materials relied upon in generating that Report.

## V.   THE AJC'S REMAINING OBJECTIONS ARE UNAVAILING

Finally, the AJC also objects to many requests in the Subpoena as "premature" and as "vague and ambiguous."  First, the Subpoena is not "premature."  Discovery is well underway. The parties in the litigation have served discovery and the scheduling order in the litigation sets the close of discovery for January 2023.  Ex. 2.  Second, the Subpoena's requests are not "vague"

or "ambiguous" so as to obviate the need for the AJC to produce any of the Requested Materials. Indeed, the AJC seems to understand the requests well, given it has asserted privileges and objections that require an understanding of the documents at issue.

## **CONCLUSION**

For the foregoing reasons, Governor Cuomo respectfully requests that the Court compel the production of the materials sought in his subpoena to the AJC.

Dated: New York, New York
      October 5, 2022

Respectfully submitted,

*/s/  Theresa Trzaskoma*

Theresa Trzaskoma
Allegra Noonan
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

Rita M. Glavin
Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for former Governor*
*Andrew M. Cuomo*

**APPENDIX**

| # | Subpoena Document Request |
|---|---|
| **1** | All subpoenas or other information requests or demands issued by the OAG, the AJC, or DPW in connection with the AJC Investigation of sexual harassment allegations against Governor Cuomo. |
| | **RESPONSE TO DOCUMENT REQUEST NO. 1:** In addition to its General Objections and Objections to Definitions and Instructions, which are incorporated herein by reference, the Committee objects to this Request as overly broad and unduly burdensome—including because it seeks "[a]ll subpoenas or other information requests or demands"—and because the Request demands documents beyond those relevant to any claim or defense of any party or proportional to the needs of the Action. The Committee further objects to this Request as vague and ambiguous, including insofar as the term "information requests" is vague and undefined.  The Committee also objects to this Request as premature in that Defendant Cuomo has yet to obtain document discovery from the parties to the Action before burdening the Committee, a nonparty, with the Requests; Defendant Cuomo should first obtain discovery from the parties to the Action and then determine what, if anything, it requires from the Committee. The Committee further objects to this Request to the extent that it seeks documents or information that may be subject to confidentiality or other restrictions or limitations on production, or protected by legislative privilege or any other applicable privilege or protection against disclosure, and to the extent that it seeks information that is private, confidential, highly sensitive, or annoying, oppressive, or embarrassing, to parties or nonparties to the action. The Committee also objects to this Request to the extent that it is duplicative of other Requests, including of requests made in the separate subpoena issued to the New York State Office of the Attorney General. Subject to and without waiver of the foregoing objections, the Committee responds that it will not produce documents in response to this Request but is willing to meet and confer with Defendant Cuomo regarding this Request. |
| **2** | All evidence gathered in connection with the AJC Investigation of sexual harassment allegations against Governor Cuomo, including but not limited to:<br>a. All documents produced or provided to the AJC by third parties (including, but not limited to, the OAG) in connection with the AJC Investigation of sexual harassment allegations against Governor Cuomo.<br>b. All documents concerning or reflecting witness statements and/or witness attorney proffers made in connection with the AJC Investigation of sexual harassment allegations against Governor Cuomo, including but not limited to any summaries or notes of witness interviews or witness attorney proffers.<br>c. Any contemporaneous recordings, including video or audio format, or transcriptions of such witness statements and/or witness attorney proffers referenced above in unredacted form. |
| | **RESPONSE TO DOCUMENT REQUEST NO. 2:** In addition to its General Objections and Objections to Definitions and Instructions, which are incorporated herein by reference, the Committee objects to this Request as overly broad and unduly burdensome—including because it seeks "[a]ll evidence"—and because the Request demands documents beyond |

| # | Subpoena Document Request |
|---|---|
| | those relevant to any claim or defense of any party or proportional to the needs of the Action. The Committee further objects to this Request as vague and ambiguous, including insofar as the terms "witness statements" and "witness attorney proffers" are vague and undefined. The Committee further objects to this Request to the extent that it seeks documents or information that may be subject to confidentiality or other restrictions or limitations on production, and to the extent that it seeks information that is private, confidential, highly sensitive, or annoying, oppressive, or embarrassing, to parties or nonparties to the action. The Committee further objects to this Request to the extent that it seeks discovery of documents protected by the attorney-client privilege, the attorney work product doctrine, legislative privilege, or any other applicable privilege or protection against disclosure.  The Committee further objects to this Request pursuant to Rule 45(d) of the Federal Rules of Civil Procedure because the documents sought are more readily available through other means, and to the extent that it seeks documents that are in the possession, custody, or control of parties or non-parties other than the Committee.  The Committee also objects to this Request as premature in that Defendant Cuomo has yet to obtain document discovery from the parties to the Action before burdening the Committee, a nonparty, with the Requests; Defendant Cuomo should first obtain discovery from the parties to the Action and then determine what, if anything, it requires from the Committee.  The Committee also objects to this Request to the extent that it is duplicative of other Requests, including of requests made in the separate subpoena issued to the New York State Office of the Attorney General. Subject to and without waiver of the foregoing objections, the Committee responds that it will not produce documents in response to this Request but is willing to meet and confer with Defendant Cuomo regarding this Request. |
| 3 | All documents reflecting or concerning communications:<br>    a. Between the AJC and any witness in the AJC Investigation of sexual harassment allegations against Governor Cuomo, including individuals or entities providing documents, statements, or testimony to the AJC.<br>    b. Between the AJC and any attorney or representative for a witness or entity in connection with the AJC Investigation of sexual harassment allegations against Governor Cuomo, including but not limited to any agreements or understandings concerning witness testimony, interviews, attorney proffers and/or production of documents in response to information requests or subpoenas.<br>    c. Between the AJC and OAG (including Special Deputies to the First Deputy Attorney General) relating to evidence collected in the AG Investigation or AJC Investigation of sexual harassment allegations against Governor Cuomo, or the transmittal of evidence between the AJC and OAG.<br>    d. Between the AJC and any state or federal law enforcement office (including any district attorney office or the U.S. Department of Justice) relating to evidence collected in the AJC Investigation of sexual harassment allegations against Governor Cuomo. |

| # | Subpoena Document Request |
|---|---|

**RESPONSE TO DOCUMENT REQUEST NO. 3:** In addition to its General Objections and Objections to Definitions and Instructions, which are incorporated herein by reference, the Committee objects to this Request as overly broad and unduly burdensome—including because it seeks "[a]ll documents"—and because the Request demands documents beyond those relevant to any claim or defense of any party or proportional to the needs of the Action. The Committee further objects to this Request as vague and ambiguous, including insofar as the terms "attorney proffers" and "information requests" are vague and undefined.  The Committee further objects to this Request to the extent that it seeks documents or information that may be subject to confidentiality or other restrictions or limitations on production, and to the extent that it seeks information that is private, confidential, highly sensitive, or annoying, oppressive, or embarrassing, to parties or nonparties to the action. The Committee further objects to this Request pursuant to Rule 45(d) of the Federal Rules of Civil Procedure because the documents sought are more readily available through other means, and to the extent that it seeks documents that are in the possession, custody, or control of parties or non-parties other than the Committee.  The Committee also objects to this Request as premature in that Defendant Cuomo has yet to obtain document discovery from the parties to the Action before burdening the Committee, a nonparty, with the Requests; Defendant Cuomo should first obtain discovery from the parties to the Action and then determine what, if anything, it requires from the Committee.  The Committee also objects to this Request to the extent that it is duplicative of other Requests, including of requests made in the separate subpoena issued to the New York State Office of the Attorney General. Subject to and without waiver of the foregoing objections, the Committee responds that it will not produce documents in response to this Request but is willing to meet and confer with Defendant Cuomo regarding this Request.

| 4 | All drafts of the AJC Report as they relate to sexual harassment allegations against Governor Cuomo. |
|---|---|

**RESPONSE TO DOCUMENT REQUEST NO. 4:** In addition to its General Objections and Objections to Definitions and Instructions, which are incorporated herein by reference, the Committee objects to this Request as overly broad and unduly burdensome—including because it seeks "[a]ll drafts of the AJC Report"—and because the Request demands documents beyond those relevant to any claim or defense of any party or proportional to the needs of the Action.  The Committee also objects to this Request as premature in that Defendant Cuomo has yet to obtain document discovery from the parties to the Action before burdening the Committee, a nonparty, with the Requests; Defendant Cuomo should first obtain discovery from the parties to the Action and then determine what, if anything, it requires from the Committee.  The Committee further objects to this Request to the extent that it seeks documents or information that may be subject to confidentiality or other restrictions or limitations on production, and to the extent that it seeks information that is private, confidential, highly sensitive, or annoying, oppressive, or embarrassing, to parties or nonparties to the action.  The Committee further objects to this Request to the extent that it seeks discovery of documents protected by the attorney-client privilege, the attorney work product doctrine, legislative privilege, or any other applicable privilege or protection against disclosure.  Subject to and without waiver of the foregoing objections, the Committee

| # | Subpoena Document Request |
|---|---|
| | responds that it will not produce documents in response to this Request but is willing to meet and confer with Defendant Cuomo regarding this Request. |
| 5 | Any reports by DPW to AJC on the AJC Investigation as they related to sexual harassment allegations against Governor Cuomo. |
| | **RESPONSE TO DOCUMENT REQUEST NO. 5:** In addition to its General Objections and Objections to Definitions and Instructions, which are incorporated herein by reference, the Committee objects to this Request as overly broad and unduly burdensome—including because it seeks "[a]ny reports"—and because the Request demands documents beyond those relevant to any claim or defense of any party or proportional to the needs of the Action. The Committee also objects to this Request as premature in that Defendant Cuomo has yet to obtain document discovery from the parties to the Action before burdening the Committee, a nonparty, with the Requests; Defendant Cuomo should first obtain discovery from the parties to the Action and then determine what, if anything, it requires from the Committee.  The Committee further objects to this Request to the extent that it seeks documents or information that may be subject to confidentiality or other restrictions or limitations on production, and to the extent that it seeks information that is private, confidential, highly sensitive, or annoying, oppressive, or embarrassing, to parties or nonparties to the action. The Committee further objects to this Request to the extent that it seeks discovery of documents protected by the attorney-client privilege, the attorney work product doctrine, legislative privilege, or any other applicable privilege or protection against disclosure.  The Committee also objects to this Request to the extent that it is duplicative of other Requests, including of Request No. 4. Subject to and without waiver of the foregoing objections, the Committee responds that it will not produce documents in response to this Request but is willing to meet and confer with Defendant Cuomo regarding this Request. |